Gregory B. Smith (USB 6657)
GREG SMITH & ASSOCIATES
7324 South Union Park Avenue
Midvale, UT  84047
(801) 641-3397
gs@justiceinutahnow.com

*Attorney for Plaintiff, Noah Moore*

# IN THE UNITED STATES DISTRICT COURT
## STATE OF UTAH

| | |
|---|---|
| NOAH MOORE,<br><br>                    Plaintiff,<br><br>*vs*.<br><br>JOEL JOHNSON AND MERIDIAN OUTCOMES, LLC<br><br>                    Defendants. | **COMPLAINT FOR UNPAID WAGES UNDER THE FLSA and UTAH LABOR LAWS**<br>**(JURY TRIAL DEMANDED)**<br><br>Case No.<br><br>Judge |

Plaintiff, Noah Moore, by and through under-signed counsel, hereby complains against Defendants, Joel Johnson and Meridian Outcomes LLC, demanding a trial by jury, and seeking relief as follows:

## I.   PARTIES

1. Plaintiff, Noah Moore, is a Utah citizen who resides in Salt Lake County, State of Utah.

2. Joel Johnson is also a Utah citizen, who resides in Salt Lake County, Utah.

3. Meridian Outcomes is a Utah LLC, Entity Number: 11934798-0160; Company Type: LLC - Domestic; Address: 584 E NORMANDY LOOP LN Draper, UT 84020; State of Origin: Utah

## II.   JURISDICTION AND VENUE

4. The Court has jurisdiction under the United States Fair Labor Standards Act of 1938, §§ 7, 15(a)(3), 29 U.S.C.A. §§ 207, 215(a)(3); 29 C.F.R. § 778.111. The Court also has supplemental jurisdiction pursuant to 28 U.S. Code § 1367.

5. Venue is proper in this Court (pursuant to 28 U.S.C. § 1391) because the activities took place in the State of Utah (within the territorial limits of the Court).

## III.   STATEMENT OF FACTS/CLAIM

1. On or about September 15, 2020, Defendants hired Mr. Moore.
2. From about that time until about mid-May of 2021, Defendants paid Mr. Moore nothing.
3. During those eight (8) months, Mr. Moore worked fifty 50 hours per week for Defendants.
4. Thus, not only did Defendants fail to pay Mr. Moore (FLSA) overtime, they failed to pay him $7.25 an hour, too.

5. On or about mid-May, Defendants paid Mr. Moore approximately $3,000 for what was labeled as living expenses.

6. On or about July of 2021, Defendants paid him again, which was $2,500 on the 5th and 20th of every month.

7. Defendants paid Mr. Moore on time until the 20th of January 2022.

8. From the 20th of January until February 4th, Mr. Moor was paid nothing.

9. Defendants fired Mr. Moore on February 4, 2022.

10. On the 7th of February, via email, Mr. Moore made a demand for his final paycheck.

11. Mr. Moore wrote: "Pay me what you owe me now please."

12. On February 16, Defendants paid Mr. Moore $2,500.

13. On February 4, 2022, Mr. Moore was separated from the employ of Defendants.

14. At all times, Noah Moore was an employee of Joel Johnson and Meridian Outcomes (Defendants).

15. Defendants—at all times while Mr. Moore worked for them—were employers of Mr. Moore under the meaning of the United States Fair Labor Standards Act (FLSA).

16. At all times while Mr. Moore worked for Defendants, Mr. Moore was a non-exempt employee under the FLSA.

17. Defendants suffered or permitted Mr. Moor, and individual, to work for them.
18. Defendants exercised a high degree of control over Mr. Moore. They demanded him to work on average fifty (50) hours per week for them.
19. They required him to go to lunch with them, often on their whims.
20. They gave him an office email address, and they locked him out of it after he was separated from their employ.
21. They had him train their employs.
22. They had him train their clients.
23. They had him use a company credit card.
24. They told him when and where to work.
25. They told him which clients to service, and how to service them.
26. They dictated to him what days he could have on and off.
27. They gave him a company shirt, and told him to wear it any time a client was nearby.
28. They expected him to answer calls, even it was as 10:00 PM.
29. He was expected to have office keys.
30. He did not have opportunity for profit or loss.
31. He was told he would be a partner, but never paid as such, and was never given a share of revenue.
32. He was not given any profit sharing.

33. Mr. Moore did not pay any of the general expenses of the business other than what he paid to fax things.
34. He was not reimbursed for his own gas, auto insurance, or wear and tear on his car.
35. He was not reimbursed for the laptop he used.
36. In July of 2021, they provided him with a desktop computer, which he returned on February 23, 2022.
37. He did not invest in Defendants' business.
38. He was given business cards, which bore the name of Defendants' business.
39. The permanence on the job was about 1 year and five months.
40. The skillset required to perform his work did not require any advanced degree or specialized training.
41. Mr. Moore's work performed for Defendant was an integral part of Defendants' business.
42. On or about July of 2021, Defendants place Mr. Moore on a salary of $60,000 yearly.
43. At this time, they also promised him profit sharing of 15% net.
44. Defendants never paid Mr. Moore any profit sharing.

45. On February 8, 2022, Mr. Moore had his attorney email Defendant regarding the unpaid minimum and overtime wages, and warned Defendants not to retaliate against Mr. Moore.

46. This action was commenced within 60 days from the date of separation.

47. Defendants fired Mr. Moore as a direct result for asking to be paid his under wages (under the FLSA and Utah law).

48. Quizzically, Defendants then offered him employment after they fired him by way of retaliation, so Mr. Moore could help with Defendants' client base.

49. On February 16, 2022, Defendants then took adverse employment action against Mr. Moore by demanding he sign settlement-type documents before Defendants would release to him his final paycheck.

50. Mr. Moore refused to sign any such documents.

51. More adverse action was taken by way of sending threats to Mr. Moore that Defendants would sue him for Mr. Moore's alleged violation of a non-compete/non-disparage/non-solicitation agreement.

### IV. CAUSES OF ACTION

52. Any cause of action supported by the facts, either now known or unknown, which include, but are not limited to, violations of the FLSA (not properly paying minimum wage, overtime, and having illegally retaliated against Plaintiff).

53. Utah law says: "In case of failure to pay wages due an employee within 24 hours of written demand, the wages of the employee shall continue from the date of demand until paid, but in no event to exceed 60 days, at the same rate that the employee received at the time of separation. The employee may recover the penalty thus accruing to the employee in a civil action. This action shall be commenced within 60 days from the date of separation. Utah Code Ann. § 34-28-5.

## V. PRAYER FOR RELIEF

54. Plaintiff prays that Defendants be ordered to stop harassing him by way of threatening vexatious litigation and other retaliatory things, and to pay him (at least) all the unpaid minimum wages and overtime consistent with the facts given herein, and which may be surmised via discovery. He also seeks the appropriate liquidated damages owed under the FLSA, plus all of his attorney's fees and costs that relate to this case, and pre- and post-judgment interest, and any other equitable and/or legal relief the Court deems fair and just.

DATED this 23rd day of February, 2022

/s/ Gregory B. Smith, attorney for Plaintiff